## JOSEPH GROVE v. JOHN MIKESELL.

1. A supervisor is a local ministerial officer, whose authority and duties to open, repair and control public roads, extends only to roads within his own district.
2. Where such supervisor, in the improvement of the road in his own district, extends ditches or other improvements beyond the limits of his district into an adjacent road district, without the permission or consent of its supervisor, such improvements are subject to the discretionary control of the supervisor of the district into which they have been so extended.

ERROR to the district court of Trumbull county.

The original action was brought by John Mikesell, in December, 1857, as supervisor of road district No. 8, in the township of Champion, in Trumbull county, against Joseph Grove, to recover damages from him for wrongfully and will-fully filling up "the ditch at the side of the road-bed running north and south through said district No. 8," and placing a dam in the ditch, and thereby causing the water to overflow the road, and to render it soft and impassable.

The action was commenced before a justice of the peace, and thence appealed to the court of common pleas.

Grove, in his answer, denies placing any dam in the ditch in district No. 8; but avers that he was at the time super-visor of district No. 5, adjoining district No. 8, and that he erected the dam within his own district No. 5 to prevent the water which had been wrongfully conducted by artificial means on to the road, and flowing into district No. 5 in such large and unnatural quantities as to injure and impair the road-bed in district No. 5, and cause the same to become founderous and impassable.

To this answer the plaintiff replied, denying the necessity of making the dam for the protection of the road in district No. 5; and also denying that Grove had given bond, and become duly qualified to act as supervisor, etc.

The bill of exceptions shows that, on the trial of the case, the plaintiff gave evidence to the jury tending to show that, about five years before the acts complained of, a ditch had been cut along the west side of said north and south road, in district No. 8, and extending into district No. 5, lying immediately south of No. 8, at the instance of the defendant, and that the same had served to discharge, in that direction, water accumulating in the ditch along district No. 8, and served, in part, to drain waters from a pond or basin lying on the road in district No. 8; and that, finding it necessary, in order to drain the pond, over the edge of which the road passed, to cut a drain to the depth of about two feet in some direction, inasmuch as it had no natural outlet, the plaintiff opened and deepened the ditch along the road, so as to drain the pond, and thereby protect and improve the road; and that, as such supervisor in district No. 8, he extended the ditch along the side of the road into district No. 5, with a proper fall or descent to drain the pond and road, and that the same did no substantial injury or damage to the road in district No. 5; and that it was not necessary and proper for the protection of the road in district No. 5 to dam up and turn back the water; but that Grove, in the spring of 1857, placed the dam and obstruction across the ditch in district No. 8, and that, upon the plaintiff removing the same, Grove, in November, 1857, erected a dam in the ditch just over the line of district No. 8, in district No. 5, causing the water to flow back upon the road in district No. 8, to the injury and obstruction of the road; and that the proper way to have protected the road in district No. 5, was to turn the water of the road by an artificial channel, to be constructed, leading from the road to a swamp or lowlands lying west of district No. 5.

The defendant, Grove, then offered evidence tending to show that the pond was situate on the summit, in district

No. 8, and that the natural outlets of the pond were one in a northeast direction, and one at the southwest side, in a. southwest direction; and also offered evidence to prove that it would require less excavation and cost to drain the pond, in a northeast direction, into a creek running toward Lake Erie, than to have drained the waters south, which directs the water into streams flowing toward the Ohio river. But, upon objections by the plaintiff's counsel, the court held that such proof was inadmissible, and excluded the same upon the ground that the supervisor having exercised his authority and discretion in opening an artificial drain, in a particular direction, the same was legal and binding upon the parties, unless it should be shown to have been done wantonly and in bad faith.

The defendant then gave evidence tending to show that he was supervisor of road district No. 5 at the time of the acts complained of; that the ditch was newly deepened along the road, in district No. 8, by plaintiff, to such depth, and extended into district No. 5, so as to drain off the water from the pond, and from a large district of land, which would not otherwise and naturally have so flowed, along the west ditch of the road, in great and unusual quantities, along the ditch and upon the road in district No. 5; and that the defendant, as supervisor of district No. 5, in order to thereby protect and improve the road in district No. 5, filled the ditch, and constructed a dam within the limits of his district No. 5, and did thereby greatly benefit and improve the road within that district.

The parties having rested, and the case having been argued to the jury, the counsel for the defendant asked the court to charge the jury, that the statute gives the supervisor authority to control the ditches on the side of the road-bed within his own district, and that no other supervisor has a right to come into such district and meddle with the road or ditches, against the will of its supervisor, either to dig ditches or to open them; "that, in draining a pond or pool of water in his district, the supervisor is bound to follow the place of the natural

flow of water, and could not legally turn surplus water out of the course of its natural flow on to district No. 5."

The court declined to so instruct the jury; but charged them " that it was the duty of the supervisor to put and keep the road in his district in repair, and to make proper and suitable ditches and drains for that purpose; that, in making ditches and drains and sluices, he had power and authority to enter upon lands adjoining or near his road for that purpose, and he had like power and authority, for the same purpose, to continue a ditch along his road into another district on the same road in a suitable and proper manner; that it was the duty of the adjoining supervisor of the same road to co-operate and harmonize in common repair and improvement; that if both did not or would not, one might extend his repair and ditch into the territory of the other, if proper, acting in good faith and not wantonly, and doing no unnecessary injury; that while, as a general rule, a supervisor has exclusive charge of his own road to repair and control it, and keep others from interfering with it or its ditches, yet it is not exclusive as against another supervisor in an adjoining district of the same road, when performing his duty, and exercising the authority he has to make ditches and repairs for his road; that if it was necessary and proper, in his judgment and discretion (not acting wantonly), to drain said pond for the repair of the road, and to make an artificial ditch for that purpose, and he had two directions in which he might properly drain it, he could, in his judgment and discretion, take either, and was not bound to take both, and dig two ditches at double the expense, and keep them open, in order to turn half the water one way and half the other, so as to divide the surplus overflowing waters northeast and southwest, as they formerly ran, when an overflow took place; that in digging his necessary artificial ditch fully to drain the pond, he was not bound to dig it over the land or swales or channel where the surplus overflowing waters of the pond naturally ran; that having exercised his judgment, discretion and authority in making the artificial ditch along the road on his own ground, and drained and repaired his

12

road in the direction he did, it was then the duty of defendant to co-operate with him in turning the water off the road in district No. 5, if necessary to protect the road in that part, and if the same could be done; that the defendant had no right to dam up and turn the water back upon the plaintiff's road, to its obstruction and injury, unless the same was necessary for the protection of his own road, and there was no other mode suitable by which he could protect his own road; that the defendant, having admitted the damming up the ditch, and flowing back of the water, and injury to plaintiff's road, as alleged, and having justified on the ground that it was necessary to do so to protect his own road, the necessity of doing so must be established by him; that if, from the proof, the jury were satisfied that the water thus carried along the road by plaintiff injured defendant's road, and defendant could not prevent or avoid the injury except by damming up the ditch, and flowing the water back, then the jury should find for the defendant; otherwise, for the plaintiff, and assess his damages.

The jury returned a verdict, in favor of the plaintiff, for three dollars damages.

The defendant thereupon moved the court to grant a new trial, for the alleged cause that the court had misdirected the jury, as to the law. The motion was overruled by the court, and judgment entered on the verdict, and the defendant excepted.

To reverse this judgment, Grove filed his petition in error in the district court, insisting that the common pleas erred:

1. In rejecting the evidence offered to show, that in draining the pond, in district No. 8, it was less expensive to drain it in its natural channel, northeast, than south on to district No. 5.

2. In refusing to charge that the plaintiff in error had a right to control the ditches of the road in his own district, and to forbid the supervisor of another district from intermeddling with them against his will.

3. In refusing to charge that the supervisor of district No. 8, in draining the pond, could not, contrary to the natural

flow of the water, legally turn the surplus water on to dis trict No. 5.

4. In the instructions given to the jury, and in holding that a supervisor has the same power in an adjacent district, against the will of its proper supervisor, to meddle with his ditches that he has on lands adjacent to his road, within his own district.

5. In overruling the motion for a new trial.

The judgment of the court of common pleas was affirmed by the district court: and the plaintiff in error has filed his petition in this court to reverse the judgment of the district court.

*George M. Tuttle* and *Birchard & Tyler*, for plaintiff in error.

*Hutchison, Cox, Ratleff & Spear*, for defendant in error.

SUTLIFF, C. J.—By the statute in force at the time of the obstruction complained of by the plaintiff in the original action, it is made " the duty of each. and every supervisor to open, or cause to be opened, all public roads and highways which shall have been " (or might thereafter be), " laid out and established through any part of the district assigned to such supervisor ; the same to keep in repair, and remove, or cause to be removed, all obstructions that may from time to · time be found thereon ; for which purpose the supervisors are (thereby) authorized to enter upon any uncultivated lands, unincumbered by a crop, near or adjoining the public roads, to cut and carry away timber, to dig or cause to be dug and carried away, any gravel, sand or stone, which may be necessary to improve or repair said road; and to enter on any lands, adjoining or lying near the road, to make such drains or ditches through the same as they may deem necessary for the benefit of the roads, doing as little injury to said lands and timber as the nature of the case, and the public good, will permit," etc.   Sec. 12, the supervisors act of February 13, 1853.   3 Curw n's St. 2131.

And by section 13, of the same act, it is provided: "That if any person, body politic or corporate, shall obstruct any public road or highway, authorized by any law of this state, and suffer such obstruction to remain to the hinderance or inconvenience of persons making use of such public road or highway, or shall by virtue of any authority whatever, or otherwise change the line, fill up, or dig out the bed of any such road or highway, or in any other manner render the same less convenient or useful than it had been previously thereto, such person, body corporate or politic, shall be subject to an action on the case, at the suit of the commissioners of the county, or supervisors in any district, or any person who shall be injured by such obstruction," etc.

The plaintiff below seems to have brought his action upon this section of the statute. In his petition he charges the defendant below with having wrongfully "filled up the ditch at the side of the road-bed in the road and public highway, running north and south, through said district No. 8, * * * whereby said road was overflowed with water for a long time, * * * and made soft and miry, * * * and was by said wrongful act of defendant obstructed and rendered of no convenience and use to the public, for the distance aforesaid, within said district. Plaintiff further says, by reason of said wrongful acts of the defendant, said road has been injured in the sum of seventy-five dollars; for which sum he, as super visor as aforesaid, asks judgment," etc.

No question was made, by counsel for defendant below, as to the power of the plaintiff to prosecute the suit as commenced, and expressed by his petition; and we shall therefore take it for granted that the statute confers power upon the plaintiff, as supervisor, to prosecute the suit for the grievances stated in the petition. And, inasmuch as the action prescribed by the statute is an action on the case, it might be a sufficient cause of action, although the act of the defendant was without the district and jurisdiction of the plaintiff as supervisor, that the injury, the flowing of the water back upon the ditches and road, *within* his district, resulted directly from such act of the defendant, without the district.

Grove *v.* Mikesell.

There would, therefore, be no difficulty upon the facts stated in the petition, and found by the jury, in sustaining the plaintiff's right to recover in the original action, were it not for the justification of the defendant. But the defendant justifies by the same authority that the plaintiff relies upon to support the action.

A supervisor is, in this state, regarded as a ministerial officer, whose duties and authority are prescribed and limited by statute, and which, for the most part, are confined to his own particular district. His duties, generally, are to open and keep in repair and unobstructed the public roads in his particular district, not owned or operated under private charters or by incorporated companies. His powers and authority have always, in this state, been particularly prescribed by statute, and seem to be reasonably adapted to the discharge of his duties as such local ministerial officer.

By the provisions of our statute, supervisors are allowed only a moderate compensation for their services, and at the same time for a neglect of the faithful discharge of the duties imposed upon them by the same statute, they are made liable to penalties. Such has been the law of this state upon the subject ever since the first statute of August 1, 1792, in relation to supervisors. And under these statutes, we understand that the courts of this state have always recognized the right of supervisors to a very liberal exercise of an honest discretion in the discharge of their official duties. It would be most unreasonable, under such statutory provisions, to hold a supervisor to a rigid exactitude in the use of the most appropriate means for the discharge of his duties.

But while this liberal rule of conduct is to be extended to the plaintiff, as supervisor, the same rule is obviously equally applicable to the defendant in the discharge of his official duties. The rule is applicable, not to the person but to the exercise of the office.

With these preliminary remarks, let us proceed to the consideration of the grounds of error alleged in the petition in error in the district court, and in overruling which it is insisted that court erred.

The 1st error assigned—that the court rejected the evidence offered by defendant below tending to show that in draining the pond in district No. 8, it would have been less expensive to have drained it in another direction—hardly appears, from all that is disclosed in the record, to have been well assigned. It certainly could not, consistently with the rule expressed, be objected to the legality of the conduct of the supervisor, that he had drained a pool of water in his district in one direction, when, in fact, it might have been drained at less expense in another direction. And there is nothing in the record showing that the object or tendency of the evidence so offered, was to show that the supervisor did not honestly exercise his best discretion in draining the pool in the particular direction he did.

The 2d and 4th errors assigned—that the court refused to charge that the defendant below had a right to control the ditches of the road in his district, etc., presents a more grave question. It is certainly difficult to perceive by what course of reasoning the conclusion could be gained, that the authority and powers of the supervisor of district No. 5, were not as absolute and ample in his district, as were the powers and authority of the supervisor of district No. 8, in his district. Yet the court refused to instruct the jury as requested, but charged them " that it was the duty of the supervisor to put and keep the road in his district in repair, and to make proper and suitable ditches and drains for that purpose. That in making ditches and sluices he had power and authority to enter upon lands adjoining or near his road for that purpose, and that he had like power and authority, for the same purpose, to continue a ditch along his road into another district in the same road, *in a suitable and proper manner;* and that it was the duty of the adjoining supervisor of the same road to co-operate and harmonize in common repair and improvement." The charge thus given is far from being in substance the charge asked. It gives the supervisor in district No. 8, the unqualified power and authority to enter upon the adjoining district, No. 5, of the adjoining supervisor, against his will and remonstrance, and to make the interests

of district No. 5 subservient to those of No. 8.   The charge, as given, would constitute the supervisor in district No. 8 the supervisor, and the supervisor in the adjoining district, No. 5, his subordinate, instead of recognizing the authority of the two supervisors as precisely equal, each being supreme in his own district.

We are clearly of the opinion that the instruction of the court to the jury, that the supervisor of district No. 8 might extend his ditches and repairs into district No. 5, against the will of its supervisor, was wrong.   Indeed, such a rule would be utterly impracticable.   Under the same rule the supervisor in district No. 5 might, by a sluice and ditch on the other side of the road-bed, conduct the same water back upon the road in district No. 8.

Nor were the instructions given the jury correct, that, to improve the road in his own district, a supervisor, under the authority given him by the statute, to enter upon lands adjoining or near his road for that purpose, " had like power and authority, for the same purpose, to continue a ditch along his road into another district on the same road," etc.

The statute already referred to, it is true, authorizes the supervisor, for the purpose of keeping his road in a proper state of repair, to enter upon any uncultivated lands, etc., near or adjoining the road, to cut and carry away any timber, to dig or cause to be dug and carried away any gravel, sand or stone to improve or repair said road; as well as to make drains or ditches for the improvement of the road.   It will be perceived, however, that by the same section of the same statute, authority is given the supervisor, after so entering upon the adjoining lands, as well to dig and carry away gravel, sand and stone for the improvement of his road, as to dig ditches and drains.   If, therefore, the adjoining part of the road, under the control of another supervisor, be included and intended by this provision of the statute, then might the supervisor of district No. 8 be justified in digging and carrying away from the road-bed in district No. 5, gravel and sand, against the will of its supervisor, for the improvement of the road in district No. 8.

It is unnecessary to here express any opinion upon the authority of a supervisor to either drain a natural pond or to drain it in a different direction from that in which the water naturally flowed from the pond; nor to what extent, if the right in a particular case exists, it should be made to appear from the particular circumstances and apparent necessity of the case in which exercised.

It is sufficient, in conclusion, to say, that we regard the assignments of error for reversal, as well made, in the particulars already indicated, and that there is, in those particulars, manifest error in the record of the court of common pleas; and that the district court erred in affirming, and not reversing, the judgment of the court of common pleas. The judgment of the district court must therefore be reversed.

And this court, proceeding to render such judgment as the district court should have rendered, orders that the judgment of the court of common pleas be reversed. It is also ordered that this cause be certified to the court of common pleas for further proceedings.

Judgment accordingly.

GHOLSON and BRINKERHOFF, JJ., concurred; PECK and SCOTT, JJ., dissented.